# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**KIMBERLY M. REID,**<br><br>_____ **Debtor**<br><br>**KIMBERLY M. REID,**<br><br>_____ **Plaintiff**<br><br>**v.**<br><br>**WELLS FARGO BANK, N.A.,**<br><br>_____ **Defendant** | **Chapter 13**<br>**Case No. 17-13453-FJB**<br><br><br><br><br><br>**Adversary Proceeding**<br>**No. 18-1072** |

### MEMORANDUM OF DECISION ON
### DEFENDANT'S MOTION TO DISMISS

**I.       INTRODUCTION**

Chapter 13 debtor Kimberly Reid ("plaintiff") filed this adversary proceeding against her

mortgagee, Wells Fargo Bank, N.A. ("defendant"), alleging violations of the Real Estate Settlement

Procedures Act ("RESPA"), violations of federal and state loan modification regulations, and breach of

contract. The gravamen of each count is alleged mishandling of requests by the plaintiff to modify or

service her mortgage. Defendant moves to dismiss for failure to state a claim on which relief can be

granted.  For the following reasons, the Court will grant the motion and dismiss the complaint.

**II.      JURISDICTION**

This adversary proceeding is one to recover damages. Because the recovery of damages can

conceivably have an effect on the case and the debtor's estate, such as by increasing the funds available

for distribution through a chapter 13 plan, it is related to a case under the Bankruptcy Code, and for that

reason (if no other) is within the "related to" jurisdiction of the U.S. District Court under 28 U.S.C. §

1334(b). The matter has been referred to the Bankruptcy Court for this district by the District Court's

standing order of reference, L.R. 201 (D. Mass.). The claims it asserts are simply counterclaims by the

estate against an entity that has filed a claim against the estate. As such, it would be a statutorily-

defined core proceeding, see 28 U.S.C. § 157(b)(2)(C) (core proceedings include counterclaims by the

estate against persons filing claims against the estate), but not one that Congress could constitutionally

empower a bankruptcy judge to finally resolve without the consent of the parties. *Stern v. Marshall*, 564

U.S. 462, 131 S. Ct. 2594 (2011). However, the Plaintiff has assented to the Bankruptcy Court's entering

final judgment in the matter; and by the present motion, the defendant has moved for the Bankruptcy

Court to enter final judgment, an order of dismissal, as to the adversary proceeding, which motion I find

amounts to consent (at least for purposes of the present motion) within the meaning 28 U.S.C. §

157(c)(2). Therefore, with the consent of both parties and pursuant to § 157(c)(2), the bankruptcy court

may enter final judgment in the matter.

### III.    FACTS AND PROCEDURAL HISTORY

On July 31, 2008, the plaintiff executed a promissory note to Mortgage Electronic Registration

Systems. The note was secured by a mortgage on the property located 10 Summit Circle, Hyde Park,

Massachusetts (the "Property"). The note and mortgage were assigned to RBS Citizens, N.A, who further

assigned the note and mortgage to the defendant in August 2013. In 2014, employment difficulties

caused the plaintiff to apply for a loan modification. The defendant allowed her to enter a trial program,

which, if completed, would have resulted in a permanent modification. However, the plaintiff lost her

job and was unable to complete the program. Upon regaining employment, the plaintiff asserts, she

made additional requests to modify the loan.  She has not attached copies of these requests to her

complaint (or otherwise submitted them); nor has she stated the dates of the requests or specified their

contents. In responses dated from April 30, 2014 through April 5, 2018, the defendant declined those

requests for modification. It was this process of alleged requests and denials that gave rise to the current complaint.

In mid-2017, the defendant began foreclosure proceedings, which process was stayed when, on September 18, 2017, the plaintiff filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On June 4, 2018, the plaintiff filed the present adversary proceeding.

In Count 1 of her three-count complaint, the plaintiff alleges that the defendant's responses violated provisions of RESPA, mainly 12 U.S.C. § 2605, which places a duty on lenders to respond to loan servicing complaints. In Count 2, the plaintiff claims that the responses violated federal regulations implementing RESPA and related state regulations. Finally, in Count 3, the plaintiff claims that by instituting foreclosure proceedings, the defendant breached express mortgage terms and the implied covenant of good faith and fair dealing under state law.

IV.    **DISCUSSION**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must set forth facts sufficient to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ruling on such a motion, the court draws reasonable inferences in the plaintiff's favor and accepts all well-pleaded facts set forth in the complaint. *E.g.*, *Martino v. Forward Air, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009). While factual allegations are accepted as true, legal conclusions need not be credited. *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). Moreover, a complaint must contain factual allegations sufficient to satisfy each element of an alleged cause of action. *See Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005).

This is not a simple motion to dismiss, one that requires the court to look only at the face of the complaint. Rather, the parties have filed a plethora of exhibits and attachments in this motion process. When deciding a motion to dismiss, a court may look beyond the complaint and consider "facts and documents that are part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v.*

*Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). The First Circuit permits consideration of "documents

incorporated by reference in [the complaint], matters of public record, and other matters susceptible to

judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). "When . . . a complaint's factual

allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of

which is not challenged), that document effectively merges into the pleadings and the trial court can

review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Trust Co.*, 137

F.3d 12, 16-17 (1st Cir. 1998). If the court considers materials other than the complaint and those

documents specified in the *Giragosian* decision, the motion to dismiss must be treated as a motion for

summary judgment. *See In re Perra*, No. 12-04054, 2013 WL 2250243, at *3 (Bankr. D. Mass. May 22,

2013).

Here, both the plaintiff and the defendant filed exhibits supplementing their briefs. Under the

*Trans-Spec* and *Giragosian* framework, the Court may look to many of these exhibits. The defendant's

motion to dismiss includes a copy of the note, mortgage, and assignment at issue. The Court may

consider the mortgage because that document is both explicitly referenced in the complaint and a

matter of public record. Complaint ¶ 12, 13; *see In re Perra*, 2013 WL 2250243 at *3 (finding recorded

mortgage a matter of public record). The Court will not consider the note or the assignment.

For her part, together with her opposition, the plaintiff attached twenty-four documents.

Nineteen are responses to requests for modification from the defendant to the plaintiff or her attorney.

These documents are explicitly incorporated by reference in the complaint. Complaint ¶ 23. The plaintiff

also attached a request for information from her attorney to the defendant, dated July 14, 2017. This

document is also explicitly incorporated by reference in the complaint. Complaint ¶ 28.  Neither party

contests the authenticity of these documents. The Court may appropriately consider these documents

at the Rule 12(b)(6) stage. *Giragosian*, 547 F.3d at 65. The Court will not look to the plaintiff's other

documents.

The defendant submitted one additional exhibit with its reply brief, a response to the aforementioned July 14, 2017 request for information. This response, dated August 17, 2017, is not explicitly referenced in the complaint.  However, the August 17, 2017 letter contained the defendant's substantive response to the plaintiff's request for information. The complaint's factual allegations are expressly linked to and dependent upon the contents of this response to the request for information. *E.g.*, Complaint ¶¶ 28, 33. Thus, the letter "effectively merges into the pleadings," and the Court may look to it in resolving the present motion. *Beddall*, 137 F.3d at 16-17.

**Count 1**

Count 1 of the complaint alleges that the defendant's letters to the plaintiff violated RESPA's mortgage servicing requirements. 12 U.S.C. § 2605; Complaint ¶ 31. RESPA imposes a duty on a loan servicer to respond to a borrower's qualified written request ("QWR") for information regarding the servicing of a loan. Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

RESPA defines a QWR as a written request which identifies the borrower and includes the borrower's reason for the belief "that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Id. § 2605(e)(1)(B). A loan servicer must acknowledge receipt of a QWR within five business days. 12 U.S.C. § 2605(e)(1)(A). Within thirty business days of receiving a QWR, a loan servicer must conduct an investigation into the borrower's request and provide the borrower with a written report of the investigation results. *Id*. § 2605(e)(2). The servicer must then make necessary corrections to the account or state why it believes that the account is correct. *Id*. § 2605(e)(2)(A)-(B). A loan servicer may extend the response deadline by an additional

fifteen days if, within the original thirty day window, "the servicer notifies the borrower of the extension and the reasons for the delay in responding." *Id*. § 2605(e)(4).

The threshold question in a RESPA action is whether a borrower's inquiry was a QWR. *In re Julien*, 488 B.R. 502, 508 (Bankr. D. Mass. 2013). If so, RESPA applies. If not, the statute is inapplicable. Courts do not agree on the level of specificity necessary for an inquiry to qualify as a QWR under section 2605(e)(1)(B). *Compare Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) ("RESPA does not require any magic language before a servicer must construe a written communication . . . as a [QWR].") *with Santander Bank, Nat. Ass'n v. Sturgis*, No. 11-10601 2013 WL 6046012, at *14 (D. Mass. Nov. 13, 2013) ("Nothing in *Catalan* . . . implies that a QWR may properly include, or that a lender has a duty to respond to, inquiries not concerning the servicing of a loan.") abrogated on other grounds by *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 167-68 (1st Cir. 2017). The cases, however, are in agreement that a loan modification request does not relate to servicing and thus does not qualify as a QWR. *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015).

Count 1 alleges that the defendant violated RESPA on nineteen occasions. Eighteen of these allegations fail at the threshold level because the plaintiff has not alleged facts sufficient to show that the defendant received QWRs. The final allegation fails because the defendant timely responded to the plaintiff's July 14, 2017 inquiry.

The plaintiff attached to her opposition the nineteen letters that the defendant sent in response to her inquiries, but those merely demonstrate that her requests for a loan modification were not granted. Thus, she has not sufficiently alleged that she sent more than a single QWR to the defendant. Paragraph 22 of the complaint states that "[plaintiff] sent Qualified Written Requests and Requests for Information pursuant to 12 U.S.C. § 2605, but the responses were either untimely, incomplete or otherwise non-responsive." Complaint ¶ 22. Paragraph 32 states that "[t]he inquiries sent by [plaintiff] and/or her attorney meet the statutory requirements for such inquiries." Complaint ¶ 32. Legal

conclusions such as these cannot survive a motion to dismiss. See *Garcia-Catalan*, 734 F.3d at 103. With one exception, the plaintiff has not alleged any facts showing that what she sent to the defendant were QWRs. The plaintiff submitted nineteen response letters from the defendant, but only one of the plaintiff's original requests. The plaintiff does not state how many requests she sent or the date of such requests. Nor does she specifically state the contents of any request.

Without these facts, the court cannot ascertain whether the plaintiff sent QWRs to the defendant. Moreover, without the dates of the plaintiff's requests the court cannot judge the timeliness of the defendant's responses. Additionally, the majority of these responses are denials of loan modification requests. Loan modification requests, without more, do not relate to servicing and do not qualify as QWRs. *Martini*, 634 Fed. App'x at 164. Therefore, the plaintiff has not alleged sufficient facts to show that the defendant violated RESPA.

The plaintiff does include one letter from her attorney to the defendant, dated July 14, 2017. The letter requested: (1) documents showing that the mortgage was a Federal Housing Administration loan; (2) a loan history statement showing the loan was three years past due; (3) all documents related to loan modification applications; (4) applicable federal loan modification regulations; (5) available loan modification options; and (6) whether the defendant refused any payments from the plaintiff. Requests (3)-(5) relate to loan modifications and do not qualify the letter as a QWR, however, the other inquiries may satisfy the requirements of a QWR. Assuming, without deciding, that the letter was a QWR, is it clear from the pleadings that the defendant met its duty to respond. The defendant responded to the request on August 15, 2017, within the thirty business day window, stating that it was finalizing its investigation and would fully respond to the request by August 17, 2017. Under section 2605(e)(4), this response qualified the defendant for a fifteen business day extension. However, such an extension proved unnecessary. On August 17, 2017, within the original thirty business day window, the defendant responded with its complete report. The report included account information addressing the

defendant's requests. Thus, the report satisfied any RESPA duties that the plaintiff's request may have triggered. For these reasons, despite taking all factual allegations in the plaintiff's favor, Count I cannot survive the motion to dismiss.

**Count 2**

In Count 2 the plaintiff alleges violations of a federal regulation and a state statute. Specifically, the plaintiff alleges violation of the "Loss Mitigation Procedures" promulgated by the Consumer Financial Protection Bureau ("CFPB") at 12 C.F.R. § 1024.41, and MASS. GEN. LAWS ch. 244 § 35B. Complaint, ¶¶ 37-38. The complaint does not specify what subsections of § 1024.41 or § 35B the defendant violated. Nor does the complaint specify the conduct that constitutes each violation.

First, the complaint alleges that the defendant violated 12 C.F.R. § 1024.41 by mishandling loan modification requests. Section 1024.41 details how a lender must handle loan modification applications before it may foreclose. Of relevance, "[t]he section does not cover duplicative requests when 'the servicer has previously complied with the requirements of [the] section for a complete loss mitigation application . . . and the borrower has been delinquent at all times since submitting the prior complete application." *Solis v. U.S. Bank, N.A.*, 726 F. App'x 221, 223 (5th Cir. 2018) (quoting 12 C.F.R. § 1024.41(i)).

The parties agree that the plaintiff applied for a loan modification in 2014. In response, the defendant allowed her to enter its loan modification trial program. After becoming unemployed, the plaintiff was unable to complete the trial program, and for that reason, the original loan modification application was ultimately denied.

Despite the outcome, the complaint suggests that the first application was handled in accordance with § 1024.41. Therefore, as long as the plaintiff remained delinquent on the loan, the defendant was not obligated to handle subsequent applications in compliance with § 1024.41. *Solis*, 726 F. App'x at 223. Nowhere in the pleadings does the plaintiff allege that she cured her delinquency

following the original application. The defendant's August 17, 2017 letter, sent exactly one month

before the plaintiff filed her Chapter 13 bankruptcy petition, indicates that the account remained

delinquent at that point. *See* Def.'s Reply App'x at 2. Without curing the deficiency, the defendant was

not required to handle subsequent applications in accordance with § 1024.41. The defendant could not

have violated the regulation if the regulation did not apply. Count 2 does not articulate a claim for relief

under § 1024.41 that is plausible on its face.

Next, I turn to the further allegation in Count 2 that the defendant violated Massachusetts loan

modification requirements. MASS. GEN. LAWS ch. 244, § 35B, requires lenders to make good faith efforts

to avoid foreclosure. Section 35B(b) states that "[a] creditor shall not cause publication of notice of a

foreclosure sale . . . upon certain mortgage loans unless it has first taken reasonable steps and made a

good faith effort to avoid foreclosure." *Id*. § 35B(b). The statute goes on to define good faith efforts as

considering "(i) an assessment of the borrower's ability to make an affordable monthly payment; (ii) the

net present value of receiving payments under a modified mortgage loan as compared to the

anticipated net recovery following foreclosure; and (iii) the interests of the creditor, including, but not

limited to, investors." Id. Section 35B also sets out the steps a creditor must follow to enjoy a

presumption of good faith. *See generally id*.

The First Circuit points out that, when deciding motions to dismiss vague 35B complaints, courts

"are not 'pigs [] hunting for truffles' in the record." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 79 (1st

Cir. 2014) (quoting *Rodriguez-Machado v. Shinseki*, 700 F.3d 48, 50 (1st Cir. 2012)) (dismissing pro se

complaint that did not "identify which notices . . . were non-compliant, whether . . .  the notices were

never sent at all, or whether one of the other requirements in [35B] was violated").

The deficiencies in the present complaint mirror the deficiencies in the pro se complaint

dismissed in *Foley*, 772 F.3d at 79. The complaint does not indicate what subsection of 35B was violated

or the conduct leading to the violation. For lack of these details, the Complaint does not allege sufficient facts to make out a plausible claim for relief under § 35B. *See Iqbal*, 556 U.S. at 678.

**Count 3**

The plaintiff's final count alleges that the defendant breached foreclosure procedures set forth in the mortgage, as well as the implied covenant of good faith and fair dealing. Regarding foreclosure procedures, the complaint cites paragraphs 9(d) and 18 of the mortgage. Complaint ¶¶ 12, 13, 46. The complaint states that Paragraph 9(d) "provides, among other things, that acceleration or foreclosure is not permitted unless authorized by regulations" promulgated by the Department of Housing and Urban Development ("HUD"). Complaint ¶ 12. The complaint goes on to explain that Paragraph 18 "provides explicit procedures respecting foreclosure." Complaint ¶ 13. The complaint does not specify any language from the mortgage, but the defendant attached a copy of the mortgage to its motion to dismiss.

The claim that the defendant breached Paragraph 9(d) of the mortgage is implausible because the complaint contains no explanation of how a breach occurred. Paragraph 9(d) merely states that the mortgage "does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of HUD]." On its face, paragraph 9(d) requires reference to HUD regulations. No such reference can be found in the complaint. The complaint makes no effort to explain how the foreclosure action ran afoul of HUD regulations or even what those regulations provide. In fact, the "Factual Allegations" section of the complaint makes no mention of the foreclosure action at all. See generally Complaint ¶¶ 7-29. Viewed in the light most favorable to the plaintiff, the allegation that the defendant breached Paragraph 9(d) is factually baseless.

Similarly, the allegation that the foreclosure breached Paragraph 18 of the mortgage lacks a plausible factual basis. That provision sets out the procedures that the defendant must follow if it pursues foreclosure. Again, the complaint does not include any factual allegations surrounding the

foreclosure action. Nor does it indicate what procedure the defendant violated. Without these facts, the court cannot find that the plaintiff has articulated a plausible claim for relief for violation of Paragraph 18.

The plaintiff also claims that the defendant's loan modification responses and the foreclosure action breached the implied covenant of good faith and fair dealing. In Massachusetts, a mortgagee "must act in good faith and must use reasonable diligence to protect the interests of the mortgagor" when undertaking a foreclosure sale. *W. Roxbury Co-op Bank v. Bowser*, 324 Mass. 489, 492 (1949); *see also MacKenzie v. Flagstar Bank, FSB*, 738 F.3d (1st Cir. 2013). However, the covenant of good faith "cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013) (quoting *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass 367 (2005)). When a mortgage does not require an explicit modification obligation, the covenant of good faith does not impose on the mortgagee a duty to modify the loan. *MacKenzie*, 738 F.3d at 493 ("It would therefore be an error to extend the implied covenant to encompass a duty to modify (or consider modifying) the loan prior to foreclosure, where no such obligation exists in the mortgage."). In a foreclosure sale, good faith means that the mortgagee takes steps to maximize the value of the property. *Armand v. Homecomings Fin. Network*, No. 12-10457, 2012 WL 2244859, at *5 (D. Mass. June 15, 2012) (noting good faith typically "entails making reasonable efforts to sell the property for the highest value possible").

The defendant's loan modification responses and the incomplete foreclosure action did not breach the covenant of good faith. The mortgage does not contain language requiring the defendant to engage in loan modification negotiations. A review of the mortgage confirms as much. Without a contractually imposed duty, the defendant could not violate the covenant of good faith by declining to modify the loan. *See MacKenzie*, 738 F.3d at 493.

**V.    CONCLUSION**

For the forgoing reasons, the Court will by separate order grant the defendant's motion to

dismiss and dismiss the complaint in its entirety.


Date:  January 9, 2019

_____

Frank J. Bailey

United States Bankruptcy Judge